Tyrone Deshan GARNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–96–0390–CR.

Court of Appeals of Texas,
Amarillo.

Oct. 23, 1997.

Sara F. Moore, Lubbock, for appellant.

William Sowder, Dist. Atty., Chad Meacham, Lubbock, for appellee.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

BOYD, Chief Justice.

In two points of asserted error, appellant Tyrone Deshan Garner challenges his conviction of injury to a child and the resulting jury-assessed sentence of 99 years confinement in the Institutional Division of the Texas Department of Criminal Justice. In his points, appellant contends the trial court reversibly erred in 1) overruling his motion for mistrial arising from the jury being allowed to separate after it had been given the court's charge, and 2) admitting evidence of unadjudicated offenses allegedly committed when appellant was a juvenile. Disagreeing with those contentions, we affirm the judgment of the trial court.

■ The circumstances giving rise to appellant's first point arose after the close of evidence. The court had prepared a written charge to the jury, a copy of which was handed to each member. The judge began reading the charge to the jury, and as he did so noticed an error in the charge. The necessary correction could not be made that day so the judge, over appellant's objection, dismissed the jury until the following day. Hence, appellant's first point.

Article 35.23 of the Code of Criminal Procedure states in relevant part:

[w]hen jurors have been sworn in a felony case, the court may, at its discretion, permit the jurors to separate until the court has given its charge to the jury. The court on its own motion may and on the motion of either party shall, after having given its charge to the jury, order that the jury not be allowed to separate, after which the jury shall be kept together, and not permitted to separate except to the extent of housing female jurors separate and apart from male jurors, until a verdict has been rendered or the jury finally discharged.

Tex.Code Crim. Proc. Ann. art. 35.23 (Vernon Supp.1997).

Thus, the question presented by this point is whether the charge was "given" to the jury when the judge partially read the imperfect charge, as well as physically handed the jurors an imperfect charge. Predictably, appellant argues that because the jury was given a copy of the proposed charge and the judge had read a portion of the charge, it was reversible error to allow them to separate.

Acknowledging the paucity of authority directly bearing on the question, appellant cites and primarily relies upon *Quinn v. State*, 164 Tex.Crim. 125, 297 S.W.2d 157 (1956) which, he says, inferentially gives credence to his argument. In that case, the trial judge had prepared a written charge and did not read it to them. Rather, he delivered it to the jury with the instruction that "here was the charge of the court and that they could read the same when they retired for their deliberations." *Id.* at 158. In disposing of the claim that this failure required reversal, the court commented, "[i]n the absence of any showing in the record that the court's failure to read the charge was calculated to injure the rights of appellant or that appellant has not received a fair and impartial trial, the error does not call for reversal." *Id.* Appellant argues that *Quinn* demonstrates "that a jury can be 'given' a charge without having it read to them." Par-

enthetically, he also notes that the harm analysis test applied by the *Quinn* court is different from the one now required, *i.e.*, it must now be determined beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

We agree with appellant that under circumstances such as those in *Quinn*, physically delivering a charge to the jury can constitute a "giving" of the charge within the purview of the statute because by actually delivering the opinion, the judge evidences his final satisfaction with, and relinquishment of, the charge. However, when a judge chooses to utilize multiple means to convey a charge to the jury, *i.e.*, by physical and oral presentation, and maintains possession and control of the master charge, he has not relinquished the charge to the jury and each means must be completed in order for the charge to be finally "given" to the jury within the meaning of the statute. In this case, he had not finished his reading at the time he noticed the mistake and decided to make the necessary correction.

Thus, we hold the charge was not "given" to the jury until the trial judge had completed the oral presentation which did not take place until the day following the discovery of the error in the charge. Because of that holding, the court did not err in allowing the jury to separate, thus making it unnecessary for us to address the Rule 81 harmless error analysis urged by appellant. Point of error one is overruled.

In appellant's second and final point, he contends the trial court erred in admitting evidence of unadjudicated offenses that allegedly occurred while appellant was a juvenile. That contention requires that we discuss the circumstances surrounding the admission of the evidence giving rise to that point. At trial, appellant's attorney notified the court that the State had furnished him with notice that it intended to introduce appellant's two juvenile adjudications during the punishment portion of the trial. Because of this, and outside the presence of the jury, appellant objected:

[w]e would object to the use of juvenile adjudications as being contrary to the law in this state and in deprivation of this defendant's due process of law under Article 1 of the Texas Constitution, Article 5 of the United States Constitution.

Pursuant to its notice, the State introduced exhibits relating to appellant's prior juvenile adjudications. The relevant exhibits were numbered 10 and 11 and were referred to as "judgments." These exhibits were actually packets which contained numerous other documents relating to earlier juvenile proceedings involving appellant.

At the point in the trial when the State was desirous of admitting the juvenile adjudications, it went through the predicate to establish them as business records. At the point the exhibits were actually tendered by the State, during the noon recess, the record reveals the following colloquy:

Mr. Brackett (appellant's trial counsel): Your honor, we will object to the introduction of those on the same basis that I made a while ago, bring my motion forward. And I'll repeat it if you want me to.

The Court: No, I am aware of what your motion is. I am though (sic), I think under the current laws these are admissible, and I will go ahead and admit them.

Prosecutor: Now, your honor, just on the record, do we want to—the judgment is contained—the judgment for each is contained within each exhibit. Do we want to take it out prior to going in front of the jury and give it a different number?

The Court: Counsel, do you have your druthers on that or do you choose not to? It doesn't make any difference to the court.

I would think the matter of proof is the adjudication, the judgment of adjudication. I think some of the other stuff—does that have the—

Prosecutor: It has the petition, you honor. It obviously has all the times that he's been served.

I don't think it has extraneous offenses. I think Mr. Brackett may have looked at it too.

Mr. Brackett: I would think that if anything should be shown to the jury, it should be the adjudication.

Prosecutor: I agree.

The Court: I would ask then, on the record, let's go ahead and make State's Exhibits 12 and 13 being the judgment of adjudication in the respective files.

Prosecutor: We will go ahead and admit State's Exhibit 10 and 11 just for the record?

The Court: For the record, yes.

Prosecutor: Okay.

The Court: Which would be the entire file.

Prosecutor: Right.

In this appeal, appellant specifically objects to documents contained within State's Exhibit 10. Within that exhibit was an instrument denominated "NOTICE OF DETENTION HEARING." Such instrument indicated the State's reason for wanting to detain appellant was based on the alleged commission of aggravated robbery and theft of a motor vehicle. The exhibit also included a "RECOMMENDATION FOR DISCHARGE FROM OFFICIAL PROBATION" which indicated the same two offenses were dismissed along with a truancy charge for which appellant was counseled and released.

■ Initially, we note that appellant's trial objection was to the admission of juvenile adjudications, and in this appeal he does not contest their admissibility. Rather, his challenge is addressed to documents contained within the Exhibit 10 packet containing a juvenile adjudication. It is the rule that a complaint is preserved for review only when the record adequately shows the trial judge and opposing counsel were aware of the substance of the defendant's objection and the correct ground for conclusion was obvious. Tex.R.App. P. 52(a);[1] Tex.R.Crim. Evid. 103(a)(1). We have not been cited to any juvenile adjudication case considering whether an objection such as that made here is sufficiently specific to maintain a complaint as to other documents contained within the packet. There are several cases dealing with similar incidents involving penitentiary pack-

ets. We think those cases address situations analogous to this one. As we have noted, appellant's trial objection was limited to the adjudications and did not specify what other portions might be inadmissible even if judgments were held admissible. It is well established that if only a portion of a pen packet is inadmissible, an objection must be properly directed to the objectionable part. *Barnes v. State*, 876 S.W.2d 316, 329 (Tex.Crim.App. 1994); *Bouchillon v. State*, 540 S.W.2d 319, 322 (Tex.Crim.App.1976); *Alvarez v. State*, 536 S.W.2d 357, 361 (Tex.Crim.App.); *cert. denied*, 429 U.S. 924, 97 S.Ct. 325, 50 L.Ed.2d 292 (1976). A trial court is not required in the face of a general objection to cull through a pen packet and find and exclude any objectionable matters he might find. *Brown v. State*, 692 S.W.2d 497, 501 (Tex.Crim.App.1985). We think the same rules would be applicable to a juvenile packet such as the ones involved here. When the jury was readmitted and the tender of Exhibits 12 and 13 was made, the record reveals this dialogue:

Mr. Brackett; (indicating): Your honor, for the purposes of the record, it is my understanding that these have been admitted into evidence.

The Court: Yeah, the entire file has. For purposes of the hearing the judgments have been, yes.

Mr. Brackett: Right. And I would renew my objections as to the—

The Court: All right. Noted.

Appellant argues that from the judge's comment that the entire file had been admitted "shows that the jury did, at the very least, know of the existence of the exhibits ... [i]t cannot be said from the record whether the jury saw the exhibits or not ... one can only wonder what purpose was served by admitting the entire files, if not to influence the jury," and concludes that "[g]iven that Appellant was a mere child of seventeen when the offense was committed, that he was eligible for parole, and that the jury gave him 99 years, it can hardly be said that the error made no contribution to the sen-

---

1. This appeal was perfected prior to the September 1, 1997 effective date of the recent extensive changes to the Rules of Appellate Procedure.

However, the new rule, number 33, in subpart (a), in essence, makes the same requirements.

tence beyond a reasonable doubt," thus, appellant concludes his case should be remanded for a new punishment hearing.

Additionally, even assuming arguendo that the error was preserved for our review, we cannot agree that reversal is required. Our examination of the record as a whole convinces us that the brief and passing reference by the court to "the entire file" without the display of the questionable items to the jury was harmless beyond a reasonable doubt. Tex.R.App. P. 81(b)(2).[2]

In summary, all of appellant's points are overruled and the judgment of the trial court is affirmed.

---

2.  Tex.R.App. P. 44.2 is the equivalent rule in the Rules of Appellate Procedure which became effective September 1, 1997.